UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELFINA RODRIGUEZ<br>          *Plaintiff*<br><br>     v.<br><br>AVONDALE CARE GROUP, LLC d/b/a<br>     AVONDALE CARE GROUP<br>PETER CARROLL<br>LORNA GRAZIO<br>          *Defendants,* jointly and severally. | № 16 Civ. 03084 (AT)<br><br>**FIRST AMENDED<br>COMPLAINT** |

Through her attorneys, Eisner & Associates, P.C., plaintiff Delfina Rodriguez brings this action pursuant to the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL) to recover *inter alia* withheld wages from defendants and alleges:

### JURISDICTION & VENUE

1. This action arises under a federal statute, 29 U.S.C. § 216(b).

2. This Court has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367.

3. The events and omissions giving rise to plaintiff's claims occurred in this judicial district.

### THE PARTIES

4. Plaintiff Delfina Rodriguez is a New York County resident and a current employee of defendants.

5. Defendant Avondale Care Group, LLC is an active limited liability company organized under the laws of New York State with offices at 505 8th Avenue, Suite 200, New York, New York 10018, and that conducts business under the name Avondale Care Group.

6. Defendant Peter Carroll is a co-owner and business manager of Avondale Care Group.

1

7. Defendant Lorna Grazio is a co-owner and staff manager of Avondale Care Group.

**STATEMENT OF CLAIMS**

8. Since May 11, 2011, defendants have employed Rodriguez to work for Avondale Care Group LLC as a certified home health aide caring for patients in patients' homes.

9. Since April 25, 2008, Rodriguez has been certified as a home health aide by the New York State Department of Health.

10. Prior to her certification as a home health aide, Rodriguez trained with Cudley's Training Program and was trained in caring for patients with heart failure, hyperglycemia, diabetes, Alzheimer's, dementia, and HIV/AIDS. Rodriguez was also trained in caring for patients that had suffered strokes, elder abuse and neglect, fire safety at home, dealing with difficult behavior, patient safety in the home, oxygen therapy in the home, precautions in a health care setting, palliative care, prevention of pressure ulcers, helping patients sit and transferring them from a bed to a chair, assisting with rang of motion exercises, and protecting patients from falls.

11. Avondale Care Group LLC provided Rodriguez with training in health information privacy and confidentiality, creative care, medication reminders, observing and reporting, abuse and neglect, hospice care, safety training and infection control, reporting incidents, accident discussion, and back safety.

12. As defendants' employee, Rodriguez's job duties to patients include dressing, grooming, feeding bathing, toileting, and transferring

13. As defendants' employee, Rodriguez's job duties also include general housework such as sweeping, mopping, dusting, bed making, cleaning refrigerators and ovens, sorting and taking out trash, washing dishes, doing laundry, preparing meals, arranging appointments, and shopping for groceries and other household items. Rodriguez spends at least twenty percent of her work time

performing such general housework.

14. Throughout her employment with defendants, Rodriguez has typically worked caring for patients in 24-hour shifts assigned to her by defendants. During these 24-hour shifts, defendants require Rodriguez to remain with the patient in the patient's home for the entire period. While Rodriguez typically has an opportunity to rest during these 24-hour shifts, Rodriguez must remain available to the patients and to immediately provide services to the patient as needed. When Rodriguez has opportunities to rest, it is usually on a cot in a hall of the patients' home or in the patients' room, on a sofa or sofa-bed, or on an air mattress.

15. Throughout Rodriguez's employment with defendants, defendants have had a practice and policy of paying Rodriguez for only 13 hours of each 24-hour shift, at various rates depending on how many shifts Rodriguez has already worked in a given week. Currently, Rodriguez is paid $130 for the first three 24-hour shifts in a week, consisting $10 an hour for 13 hours. If Rodriguez works a fourth 24-hour shift, she is paid $190, consisting of wages for 13 hours of the shift. If Rodriguez works a fifth, sixth, or seventh shift in a week, she is currently paid $195 for those shifts, consisting of wages for 13 hours of each shift.

16. Defendants practice and policy of paying Rodriguez for only 13 hours of each 24-hour shift gave no regard to the number of hours Rodriguez actually worked or was on-call.

17. Defendants have not instructed Rodriguez that she is to sleep for at least 8 hours during each 24-hour shift and that she is to take 3-hours during each 24-hour shift to eat meals.

18. All 24 hours of Rodriguez's 24-hour shifts are compensable work hours.

19. Throughout her employment with defendants, Rodriguez has maintained a home where she resides, apart from the homes of the patients where she works. Rodriguez has not been a "residential employee" of defendants as defined by 12 NYCRR 142-3.1(b). Similarly, because

3

Rodriguez has not resided in the homes of the patients or of defendants, her employer, she has not been a "live-in worker" as that term is used by 29 C.F.R. § 552.102(a).

20. Because defendants failed to provide wage notices and statements as they were required to under NYLL, plaintiffs have had to rely on the best of their recollection to allege precise dates and other matters related to their employment with defendants.

21. Throughout her employment, Rodriguez has worked one to seven 24-hour shifts (24 to 168 hours) each week caring for patients, for which she was only paid 13 hours per 24-hour shift.

22. Throughout her employment, Rodriguez has typically worked at least three 24-hour shifts each week, for a total of 96 hours worked each week.

23. Defendants have performed related activities through unified operations or common control since May 11, 2011, with the common purpose of running a for-profit agency that provides senior care in the home and individualized support for clients living in senior residences.

24. On information and belief, since May 11, 2011, defendants have constituted an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 203(s)(1), with a gross annual volume of sales made or business done of not less than $500,000. Defendants' enterprise included Avondale Care Group, LLC d/b/a Avondale Care Group, and potentially other entities unknown to plaintiff at this time. Defendants' enterprise has had employees engaged in commerce that handle or otherwise work on goods and materials that have been moved in or produced for commerce, and that use interstate wires when providing and receiving work assignments. Plaintiff will likely have additional evidentiary support after a reasonable opportunity for further investigation and discovery concerning the income and finances of defendants' enterprise.

25. Throughout her employment by defendants, Rodriguez engaged in commerce or in the

production of goods in commerce. In particular, Rodriguez handled goods moving in interstate commerce when caring for patients, and used interstate wires when receiving work assignments over the telephone, or clocking-in and -out using Avondale's time reporting system. Rodriguez is likely to have additional evidentiary support after a reasonable opportunity for further investigation and discovery.

26. Rodriguez is a covered employee under the FLSA and is not exempt from the minimum wage and maximum hour requirements under 29 U.S.C. § 213. As defendants' employee, Rodriguez provided care to patients that defendants' assigned her to.

27. Rodriguez is an employee as defined by NYLL § 190(2) and is covered by the Minimum Wage Order for Miscellaneous Industries and Occupations promulgated by the New York State Department of Labor and codified in Part 142 of Title 12 of the Official Compilation of Codes, Rules, and Regulations of the State of New York (12 NYCRR 142).

28. Rodriguez is an employee as defined by 12 NYCRR § 142-2.14(a).

29. Rodriguez has not lived in the home of her employer and has performed housekeeping as part of her principal duties. Accordingly, Rodriguez is not a "companion" as defined by 12 NYCRR § 142-2.14(c)(1)(ii).

30. Since on or about May 11, 2011, defendants failed to provide Rodriguez with wage notices, either in English or in the plaintiff's primary language of Spanish, containing *inter alia* the rates of pay and basis thereof, allowances, regular pay day, name of employer, any additional business names, physical address of employer and telephone number, in violation of NYLL § 195(1).

31. Since on or about May 11, 2011, defendants failed to notify plaintiff in writing of any changes to the information that was to be provided by wage notices, in violation of NYLL § 195(2).

32. Since on or about May 11, 2011, defendants have failed to furnish wage statements to Rodriguez, with each payment of her wages, that accurately state *inter alia* her rate or rates of pay and the basis thereof, in violation of NYLL § 195(3).

33. Since on or about May 11, 2011, defendants failed to notify plaintiff in writing, or by public posting, of the employer's policy on sick leave, vacation, personal leave, holidays, and hours, in violation of NYLL § 195(5).

34. Because defendants failed to provide accurate wage notices and statements as they were required to under NYLL, Rodriguez has had to rely on her recollection and inferences based on defendants' faulty wage statements to allege her rate or rates of pay and other matters related to her employment with defendants.

35. Since on or about May 11, 2011, defendants have willfully paid Rodriguez below the minimum wage rate required by the FLSA, 29 U.S.C. § 203. In particular, defendants have failed to pay Rodriguez any wages for 11 hours of each 24-hour shift she worked.

36. Since on or about May 11, 2011, Rodriguez has worked for defendants in excess of forty hours each week, but defendants have willfully failed to pay Rodriguez at the overtime rate required by the FLSA, 29 U.S.C. § 207, for the time in excess of forty hours that she has worked each week.

37. Since on or about May 11, 2011, defendants willfully paid Rodriguez below the minimum wage rate required by NYLL § 652 and 12 NYCRR 1462-2.1.

38. Since on or about May 11, 2011, defendants have willfully failed to pay Rodriguez at her regular rate for all the hours she has worked each week and deducted from her wages in violation of NYLL § 193. In particular, defendants have willfully failed to pay Rodriguez any wages for 11 hours of each 24-hour shift she worked.

39. Since on or about May 11, 2011, Rodriguez worked over forty hours each week for defendants, and defendants willfully failed to pay Rodriguez at the overtime rate required by NYLL, 12 NYCRR 142-2.2, for the time in excess of forty hours that she worked each week.

40. Since May 11, 2011, Rodriguez worked shifts of ten or more hours each workday, but defendants willfully failed to pay her a spread-of-hours premium for those shifts, in violation of 12 NYCRR 142-2.4.

41. Since May 11, 2011, defendants have employed Rodriguez as a "home care aide" as defined by the New York Home Care Worker Wage Parity Act, N.Y. Pub. Health Law § 3614-c.

42. Rodriguez is a "covered employee" as defined by the Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16).

43. Upon information and belief, defendants have entered into contracts with government agencies to pay Rodriguez, and other similarly situated employees, wages as required by the New York Home Care Worker Wage Parity Act, N.Y. Pub. Health Law § 3614-c and the Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16). These contracts were made with an intent to benefit Rodriguez and other similarly situated employees.

44. Upon information and belief, defendants have made certifications to government agencies that they are in compliance with the terms of the New York Home Care Worker Wage Parity Act, N.Y. Pub. Health Law § 3614-c and the Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16).

45. Upon information and belief, defendants have failed to pay Rodriguez the applicable minimum rate of home care aide total compensation established by the New York Home Care Worker Wage Parity Act, N.Y. Pub. Health Law § 3614-c and the Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16).

46. Upon information and belief, defendants breached their obligations to pay Rodriguez all wages she was due under the New York Home Care Worker Wage Parity Act, N.Y. Pub. Health Law § 3614-c and the Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16) by failing to pay Rodriguez any wages for hours she worked. As a result, Rodriguez has been injured.

47. As an intended third party beneficiary of defendants' contracts with government agencies to pay wages pursuant to the New York Home Care Worker Wage Parity Act, N.Y. Pub. Health Law § 3614-c and the Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16), Rodriguez is entitled to relief for the breach of these contractual obligations.

48. Upon information and belief, defendants have been unjustly enriched at the expense of Rodriguez by failing to pay Rodriguez the wages due to her under the New York Home Care Worker Wage Parity Act, N.Y. Pub. Health Law § 3614-c and the Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16).

49. Defendants and accepted the benefits of the work Rodriguez performed at Rodriguez's expense, and it is inequitable for defendants to reap the benefits of Rodriguez's labor without paying all wages due under the New York Home Care Worker Wage Parity Act, N.Y. Pub. Health Law § 3614-c and the Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16).

**PRAYER FOR RELIEF**

Plaintiff requests that this Court grant her the relief to which she is entitled and:

(a) enter judgment declaring that defendants willfully violated the FLSA;

(b) enter judgment declaring that defendants willfully violated NYLL;

(c) enter judgment declaring that defendants breached contractual duties they had toward plaintiff;

8

(d) enter judgment declaring that defendants were unjustly enriched at plaintiff's expense;

(e) award plaintiff the minimum wages she is owed under the FLSA and NYLL;

(f) award plaintiff the regular wages she is owed under NYLL;

(g) award plaintiff the overtime wages she is owed under the FLSA and NYLL;

(h) award plaintiff the spread-of-hour premiums she is owed under NYLL;

(i) award plaintiff compensatory damages for defendants' violations of the FLSA and NYLL;

(j) award plaintiff liquidated or punitive damages pursuant to the FLSA;

(k) award plaintiff liquidated or punitive damages pursuant to NYLL;

(l) award plaintiff statutory damages for defendants' notice and record-keeping violations under NYLL;

(m) enjoin defendants from retaliating against plaintiff and current or former employees;

(n) award plaintiff's attorneys' fees pursuant to 29 U.S.C. § 216, NYLL § 663, and all other applicable law;

(o) award plaintiff damages, plus interest, for defendants' breach of contract;

(p) award plaintiff compensatory damages or restitution for defendants' unjust enrichment;

(q) award plaintiff pre- and post-judgment interest as provided by law; and

(r) grant such other relief that is just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Dated: New York, New York
      July 15, 2016

Respectfully submitted,

EISNER & ASSOCIATES, P.C.
*Attorneys for Plaintiff*

By:_____
Thomas J. Lamadrid
39 Broadway, Suite 1540
New York, New York  10006
thomas@eisnerassociates.com
(212) 473-8700