UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELFINA RODRIGUEZ,<br><br>                 Plaintiff,<br><br>-against-<br><br>AVONDALE CARE GROUP, LLC d/b/a AVONDALE CARE GROUP, PETER CARROL, LORNA GRAZIO,<br><br>                 Defendant. | 1:16 Civ. 03084<br><br>**DEFENDANTS' SEPARATE STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1 IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

      Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Defendants AVONDALE CARE GROUP, LLC, PETER CARROL, and LORNA GRAZIO submit the following statement of material facts as to which there is no genuine issue to be tried in support of their cross-motion for summary judgment against Plaintiff DELFINA RODRIGUEZ's and in opposition to Plaintiff's motion for summary judgment:

      1.     Avondale Care Group, LLC d/b/a Avondale Care Group ("Avondale") is a licensed home care services agency that employs approximately 1,200 active home health aides. (Exhibit 5 attached to Affirmation of Thomas Lamadrid ("Lamadrid Aff."), ¶ 7; Exhibit 4 attached to Lamadrid Aff., ¶ 6 [3/10/2017 Reporter's Transcript of Deposition of Raina Van Dyke for Defendants ("Van Dyke Tr.") at p. 52].)

      2.     The administrative structure at Avondale has several layers. Defendant Lorna Grazio is owner and Defendant Peter Carroll is President and owner. In addition Grazio and Carroll, various individuals oversee departments, ranging from billing & payroll, authorization and pre-billing, human resources, operations, and medical services and nursing. Approximately

20 individuals are employed in administrative positions. (Affirmation of Raina Van Dyke in Support of Defendants' Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Van Dyke Affirm."), ¶ 3)

3. Raina Van Dyke is the Director of Operations and she oversee the primary day-to-day operations of Avondale. (Van Dyke Affirm., ¶¶ 1-2.)

4. To comply with various Federal Labor Standards Act and New York Labor Law statutes and regulations, Avondale has sought and continues to seek legal counsel, advice, and opinion regarding the ever changing legal landscape of labor laws as they apply to the Home Health Care industry. (Van Dyke Affirm., ¶ 4.)

5. As a licensed home care services agency, Avondale employs home health aides, who provide "personal care services" under the supervision of a licensed nurse. "Personal care services means some or total assistance with personal hygiene, dressing and feeding; nutritional and environmental support functions; and health related tasks." The services the home health aide is to provide "must be essential to the maintenance of the resident health and safety in his or her own home based on plan of care prepared by a nurse." (Affirmation of Jeanette Dixon in Support of Defendants' Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Dixon Affirm."), ¶ 2, Ex. A.)

6. Because Avondale employs home health aides and some of its contracts receive Medicare and/or Medicaid funding, Avondale participates in the Home Care Worker Wage Parity Act, as required by New York Law. Currently, the minimum cash portion that Avondale is required to pay employees is $11.00 per hour, with the benefit portion at a minimum rate of $4.09. Thus, Avondale's home health aide employees currently make at a minimum $15.09 per hour. Avondale is not required to directly pay the benefit portion to the employee if the benefit

portion is paid directly into the benefits that the employees, including Plaintiff, receives. Avondale pays the benefit portion directly into the benefits for employees, thus the employees do not see the benefit portion in their wages. Employee benefits include paid time off (or vacation pay), sick time, and health insurance. (Van Dyke Affirm., ¶ 8; Van Dyke Tr. 77-78.)

7. Home health aides employed by Avondale work various types of shifts, including hourly shifts, such as eight- and twelve-hour shifts, and "live-in" shifts, where a home health aide is assigned a 24-hour shift to a patient at the patient's home. During the "live-in" 24-hour shift, the live-in aide works 13 hours and receives a total break period of 11 hours, which include eight hours of sleep, five of which is uninterrupted and three hours total of meal break. (Van Dyke Affirm., ¶ 6; Van Dyke Tr. 21-22.)

8. For "Live-In" shifts, home health aides are paid a particular rate for the first three 24-Hour "Live-In" shifts, which comes to 39 hours (13 hours at three days). If the home health aide works additional "Live-In" shifts in a given a workweek, the rate for the subsequent shifts is increased to take into account overtime. These rates are based on the home health aide-employee taking the required breaks. If the home health aide-employee is unable to take the required breaks and immediately informs Avondale with accurate and specific records as to the specific occurrence, Avondale will compensate the home health aide-employee for the additional time the home health aide-employee worked in excess to the 13 hours of a given "Live-In" shift. (Van Dyke Affirm., ¶ 7; Van Dyke Tr. 68-69.)

9. Per the Employee Handbook that every new home health aide hire receives, "live-in employees must be paid not less than for thirteen hours per twenty-four hour period provided that they are afforded at least eight hours for sleep and actually receive five hours of uninterrupted sleep, and that they are afforded three hours for meals." If the employee:

> do[es] not receive five hours of uninterrupted sleep, the eight-hour sleep period exclusion is not applicable and [the home health aide] as the employee must let [Avondale] know immediately so that [the home health aide] can [be] paid all eight hours. Similarly, if [the home health aide is] not actually afforded three work-free hours for meals, the three-hour meal period exclusion is not applicable and [the home health aide] must let [Avondale] know immediately so that [the home health aide] can be paid for this time.

(Dixon Affirm., ¶ 4, Ex. C.)

10. In accepting employment with Avondale, the employee accepts the Live-In Agreement, which provides:

> The NY DOL advised the industry at a conference that it will enforce the 13-hour workday pay practice unless the employee has specific records showing that he/she was not afforded eight hours for sleep, five uninterrupted hours, and three uninterrupted hours for meals. In interpreting these provisions, it is the opinion and policy of [Avondale] that live-in employees must keep accurate and specific records and inform [Avondale] immediately if [the employee is] not getting the required breaks. If there is no specific and accurate records stating otherwise you must indicate your ability to take the requisite breaks by entering this information in to your Telephonic Duty Sheet and/or signed Timesheet.

The employee is informed that "[t]his Live-In Agreement is contractual, binding, enforceable, and cannot be changed by the employer." (Dixon Affirm., ¶ 4, Ex.C.)

11. Plaintiff Delfina Rodriguez was hired as a certified home health aide at Avondale on May 11, 2011, after she completed an employment application, an orientation conducted by the Human Resources Department, and passed background check as required by the Department of Health. (Amended Compl., ¶ 8; Amended Answer., ¶ 8; Ex. 4, Van Dyke Tr., 56-58.)

12. Plaintiff claims her primary language is Spanish, that she understands very little English, and can read very little, if any English. (Affirmation of Plaintiff Delfina Rodriguez in Support of Plaintiff's Motion for Summary Judgment, ¶ 2.)

13. The Human Resources Department at Avondale has employees who fluently speak English and Spanish. If a potential home health aide-employee or home health aide-employee has difficulty understanding English, Avondale provides an employee who is fluent in

4

Spanish and can provide assistance with understanding any documents before the potential home health aide-employee or home health aide-employee signs a given document, acknowledging receipt and understanding of that document. Accordingly, no document is signed by any employee without the employee understanding it. (Van Dyke Tr. 25, 187-89.)

14. Plaintiff acknowledged on the date of her hire by signature that she "received a copy of TAG Employee Handbook and will become familiar with the procedures, policies, and benefits and agree to comply with standards of conduct contained therein. If there is anything [she] do[es] not understand, [she] will request an explanation from a manager." (Dixon Affirm., ¶ 5, Ex. D.)

15. As an employed home health aide at Avondale, Plaintiff acknowledged by signature that she understood that "[p]ersonal care services means some or total assistance with personal hygiene, dressing and feeding; nutritional and environmental support functions; and health related tasks," and that the personal care services she is to provide "must be essential to the maintenance of the resident health and safety in his or her own home based on plan of care prepared by a nurse." Plaintiff understands the personal care services include:

- Bathing assistance

- Resident's laundering

- Dressing grooming including care of hair, shaving and ordinary care of nails, teeth and mouth;

- Toileting; this may include assisting the resident on and off the commode or toilet;

- Walking, beyond that provided by durable medical equipment, within the home and outside the home;

- Transferring from bed to chair or wheelchair

5

- Feeding/meal preparation
- Administration of medication by the resident, including prompting the resident as to time, identifying the medication for the resident, bringing the medication and any necessary supplies or equipment to the resident, opening the container for the resident, positioning the resident for medication and administration, disposing of used supplies and materials and storing the medication properly,
- Use of medical equipment
- Performance and maintenance of exercise program
- Care of ostomy after ostomy has achieved its normal function.
- Care of foley catheter

(Dixon Affirm., ¶ 6, Ex. E (311-312).)

16. At hire and throughout Plaintiff's employment, Plaintiff completed annual trainings, including taking and passing various tests prepared in English. Plaintiff signed these tests. (Dixon Affirm., ¶ 5, Ex. F.)

17. Plaintiff was trained how to clock in and out remotely by phone, and to identify Plaintiff's completed tasks during a given home health aide shift. Plaintiff also acknowledged by signature her understanding of the time management and billing compliance program at Avondale. The program identifies that she must properly clock in and out, and code the tasks she completed when clocking out. (Dixon Affirm., ¶ 8, Ex. G; *Id.*, ¶ 9, Ex. H [1/31/2017 Reporter's Transcript of Deposition of Plaintiff Delfina Rodriguez ("1/31/2017 Plaintiff Tr.") at pp. 39-41].)

18. Plaintiff often worked 24-hour live in shifts, she was at a given patient's residence for five or more days in a given week, and Plaintiff was provided adequate sleep lodging. (Dixon Affirm., ¶ 2, Ex. B; *Id.*, ¶ 9, Ex. H [1/31/2017 Plaintiff Tr. at p. 34].)

19. Plaintiff is aware of Avondale's sleep requirement policy. (Dixon Affirm., ¶ 10, Ex. I [2/23/2017 Reporter's Transcript of Deposition of Plaintiff Delfina Rodriguez ("2/23/2017 Plaintiff Tr.") at pp 172-73].)

20. When entering her tasks, Plaintiff often punched in codes 61 and 62, identifying completed tasks of various shifts (over 100 shifts) as "Live-In Received 8 hours of sleep […]" and "Live-In Received 3 hours of break time," respectively. (Dixon Affirm., ¶ 11, Ex.J .)

21. Plaintiff claims that all these entries were entered in "error" or "accidently," and that they all are "mistakes." (Dixon Affirm., ¶ 9, Ex. H [1/31/2017 Plaintiff Tr. at pp 83-84].)

22. In her responses to Defendants' Special Interrogatories, Plaintiff verified that in a given week, she worked 144 hours on average weekly. (Dixon Affirm., ¶ 12, Ex. K.)

23. At her deposition, taken after the discovery responses to Defendants' Special Interrogatories, she stated that she had not said that she had worked 144 hours on average weekly. (Dixon Affirm., ¶ 10, Ex. I [2/23/2017 Plaintiff Tr. at p. 124].)

24. Per the Live-In Agreement to which Plaintiff agreed by acknowledging her receipt of the Employee Handbook and understanding of the policies and procedures contained therein, Plaintiff knew she needed to alert Avondale promptly if she was unable to take the required sleep and meal breaks, but Plaintiff failed to follow policies and procedures. (Dixon Affirm., ¶¶ 4-5, Ex. C & D.)

25. Moreover, Plaintiff understood that if she had any concerns with payroll, specifically if she believed she was not getting paid for time worked as a home health aide, she was to submit a Payroll Concern Form, and Plaintiff has filed forms in the past. (Dixon Affirm., ¶ 13, Ex. L.)

26. Plaintiff never submitted any Payroll Concern Forms to Avondale claiming that she was not receiving pay for time she supposedly worked during allotted sleep and meal breaks allocated in a 24-hour "live-in" shift.

27. Before filing this instant law suit on April 15, 2016, Plaintiff never contacted anyone at Avondale and informed them that she was unable to take the required sleep and meal breaks when working Live-In shifts.

28. After filing the instant law suit, Plaintiff continued to work 24-Hour "Live-In" shifts. (Dixon Affirm., ¶ 13, Ex. L.)

29. When Plaintiff was deposed on January 31, 2017, and stated that she could not sleep when caring for particular patients and asserted that she "never" slept, Avondale assigned Plaintiff primarily to hourly shifts, ranging from 6- to 12-hour shifts, notwithstanding that Plaintiff had not previously alerted Avondale of these alleged times where she was unable to take her breaks. (Dixon Affirm., ¶ 15, Ex. N.)

30. Plaintiff does not know who Lorna Grazio is, nor does she know who Peter Carroll is. (Dixon Affirm., ¶ 9, Ex. H [1/31/2017 Plaintiff Tr. at pp 71-72: "I'm suing Avondale. I don't know those two other people."].) She interacts primarily with coordinators and supervisors. (Dixon Affirm., ¶ 10, Ex. I [2/23/2017 Plaintiff Tr. at pp 173].)

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

31. Plaintiff is still an employee at Avondale, and at all times as an employee Plaintiff has received weekly Earning statements, outlining the wage she earned (including regular and overtime), dependent on the shift she completed. (Dixon Affirm., ¶ 14, Ex. M.)

DATED: New York, New York
September 1, 2017

        MANNING & KASS
         ELLROD, RAMIREZ, TRESTER LLP

        By: /s/ Jeanette L. Dixon
         Jeanette L. Dixon
         *jld@manningllp.com*

One Battery Park Plaza, 4th Floor
New York, New York 10004
(212) 858-7769

Attorneys for AVONDALE CARE GROUP, LLC., PETER CARROLL and LORNA GRAZIO