UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DELFINA RODRIGUEZ,

                Plaintiff,

      -against-

AVONDALE CARE GROUP, LLC d/b/a
AVONDALE CARE GROUP, PETER
CARROL, LORNA GRAZIO,

            Defendant.

1:16 Civ. 03084

**MEMORANDUM OF LAW**

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Jeanette L. Dixon
  *jld@manningllp.com*
MANNING & KASS, ELLROD,
RAMIREZ, TRESTER LLP
One Battery Park Plaza, 4th Floor
New York, New York 10004
(212) 858-7769

Attorneys for AVONDALE CARE
GROUP, LLC., PETER CARROLL and
LORNA GRAZIO

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL BACKGROUND ...............................................................................2

     A.    Avondale Care Group ..............................................................................2

     B.    Plaintiff's Employment at Avondale Care Group ...................................4

III.  ARGUMENT ......................................................................................................7

     A.    Legal Standard .........................................................................................7

     B.    Avondale Complied with Minimum Wage and Overtime Laws Under the FLSA and NYLL ..............................................................................9

     C.    Plaintiff Was Not "Employed" by Avondale as to any Hours in Access to the Compensable 13 Hours of Any Given "Live-In" Shift Because Avondale Care Had No *Actual* of *Constructive* Knowledge of Plaintiff's Claimed "Work" During Sleep and Meal Breaks ..................................11

     D.    Remaining NYLL Issues ........................................................................13

           1.    Plaintiff Received Weekly Wage Statements in Compliance with NYLL § 195(3) ......................................................................13

           2.    Avondale Complies with the New York Home Care Wage Parity Act ...................................................................................14

           3.    Plaintiff is Not Entitled to "Spread of Hours" Pay ...................15

     E.    The Individual Named Defendants Are Not Plaintiff's "Employer" under the FLSA or NYLL ...............................................................................16

IV.  CONCLUSION ..................................................................................................20

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abramson v. Pataki*,
    278 F.3d 93 (2d Cir. 2002).................................................................................. 7

*Allen v. City of Greenville*,
    No. 4:97CV-57-D-B, 1999 U.S. Dist. LEXIS 20207 (N.D. Miss. Dec. 16, 1999).......... 11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................................................. 7, 8

*Bedasie v. Mr. Z Towing, Inc.*,
    No. 13 CV 5453, 2017 WL 1135727 (E.D.N.Y. Mar. 24, 2017) .................................... 16

*Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*,
    No. 16-CV-541 (ARR)(JO), 2016 U.S. Dist. LEXIS 172767 (E.D.N.Y. Dec. 12,
    2016) ...................................................................................................................... 9, 10

*Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*,
    No. 16-CV-541 (ARR)(JO), 2017 U.S. Dist. LEXIS 75286 (E.D.N.Y. May 17,
    2017) ...................................................................................................................... 11

*Brown v. Eli Lilly & Co.*,
    654 F.3d 347 (2d Cir. 2011).................................................................................. 8

*Carter v. Dutchess Community College*,
    735 F.2d 8 (2d Cir. 1984)...................................................................................... 17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................................................. 7, 8

*Chao v. Gotham Registry, Inc.*,
    514 F.3d 280 (2d Cir. 2008)............................................................................ 2, 12, 13

*Chu Chung v. New Silver Palace Rest., Inc.*,
    272 F.Supp.2d 314 (S.D.N.Y. 2003)...................................................................... 16

*Davis v. Food Lion*,
    792 F.2d 1274 (4th Cir. 1986) .............................................................................. 12

*Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*,
    27 F. Supp. 3d 313 (E.D.N.Y. 2014) ..................................................................... 10

*FDIC v. Great Am. Ins. Co.*,
    607 F.3d 288 (2010)............................................................................................. 8

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
    646 F.2d 413 (9th Cir. 1981) ............................................................................... 12

*Gallo v. Prudential Residential Servs., Ltd. P'ship*,
22 F.3d 1219 (2d Cir. 1994) .................................................................................... 8

*Gray v. Powers*,
673 F.3d 352 (5th Cir. 2012) .................................................................................. 17

*Graziadio v. Culinary Inst. of America*,
817 F.3d 415 (2d Cir. 2016) ................................................................................... 18

*Haybarger v. Lawrence County Adult Prob. & Parole*,
667 F.3d 408 (3d Cir. 2012) ................................................................................... 18

*Herman v. RSR Sec. Servs. Ltd.*,
172 F.3d 132 (2d Cir. 1999) ................................................................................... 17

*Holzapfel v. Town of Newburgh*,
145 F.3d 516 (2d Cir. 1998) ................................................................................... 12

*Irizarry v. Catsimatidis*,
722 F.3d 99 (2013) ........................................................................................... 17, 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ................................................................................................. 8

*Mendez v. U.S. Nonwovens Corp.*,
314 F.R.D. 30 (E.D.N.Y. 2016) ............................................................................ 9, 10

*Miner v. Clinton Cnty.*,
541 F.3d 464 (2d Cir. 2008) ..................................................................................... 8

*Morangelli v. Chemed Corp.*,
922 F. Supp. 2d 278 (E.D.N.Y. 2013) .................................................................... 16

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
No. 11 CIV. 6366 (PAC), 2012 WL 3886555 (S.D.N.Y. Sept. 6, 2012) ................ 19

*Newton v. City of Henderson*,
47 F.3d 746 (5th Cir. 1995) .................................................................................... 12

*Nuriddinov v. Masada III, Inc.*,
No. 15 CV 5875 (KAM)(RML), 2017 U.S. Dist. LEXIS 116357 (E.D.N.Y. July
24, 2017) ................................................................................................................. 16

*Samuels v. Mockry*,
77 F.3d 34 (2d Cir. 1996) ......................................................................................... 8

*Sethi v. Narod*,
974 F. Supp. 2d 162 (E.D.N.Y. 2013) .................................................................... 16

*Trocheck v. Pellin Emergency Med. Serv., Inc.*,
61 F. Supp. 2d 685 (N.D. Ohio 1999) .................................................................... 10

*White v. Baptist Mem'l Health Care Corp.*,
699 F.3d 869 (6th Cir. 2012) .................................................................................. 13

*Yang v. ACBL Corp.*,
    427 F. Supp. 2d 327 (S.D.N.Y. 2005) ............................................................. 16


## **FEDERAL STATUTES**

29 U.S.C. § 203 ................................................................................................... 12

29 U.S.C. § 207 ..................................................................................................... 9


## **STATE STATUTES**

N.Y. Lab Law § 195(1) ......................................................................................... 1

N.Y. Lab. Law § 195(3) ....................................................................................... 14

N.Y. Lab. Law § 198 1-b ....................................................................................... 1

N.Y. Lab. Law § 652 ........................................................................................... 16

Public Health Law § 3614-c ............................................................................... 14


## **OTHER AUTHORITIES**

Application of the Fair Labor Standards Act to Domestic Service,
    78 F.R. 60454(Oct. 31, 2013) ..................................................................... 10

N.Y. Dep't of Labor, Counsel Opinion Letter, RO-09-00169 Live-In Companions (March
    11, 2010) ........................................................................................................... 9


## **RULES**

Fed. R. Civ. Proc. 56 ............................................................................................. 7


## **REGULATIONS**

29 C.F.R. § 785.11 ............................................................................................... 12

29 C.F.R. § 785.22(a) .......................................................................................... 10

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ................................................. 9

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 ................................................. 16

N.Y. Comp. Codes R. & Regs., tit. 12 § 142-2.14........................................................................ 12

## MEMORANDUM OF LAW

## I.    <u>INTRODUCTION</u>

Plaintiff DELFINA RODRIGUEZ fails to (and cannot) meet her burden that summary judgment is warranted as to Plaintiff. Rather, the Court should grant summary judgment in favor of Defendants AVONDALE CARE GROUP, LLC d/b/a AVONDALE CARE GROUP, PETER CARROL, and LORNA GRAZIO (collectively "Avondale" unless otherwise noted) did not violate any federal or state labor laws.[1] Avondale properly excluded 11 hours from the 24-hour "live-in" shifts because the parties *agreed* that Plaintiff would take sleep and meal breaks (that totaled 11 hours). Plaintiff admits she knew of the policies and procedures as to the required breaks and indeed, noted compliance *for more than 100 of her 24-hour "live-in" shifts*.

While she now speciously claims that she "never" took the required breaks because she was unable to do so, the fact remains that Plaintiff failed (and admits her failure) to follow the requisite policies and procedures in which she must place Avondale on immediate notice that she was not taking the agreed upon sleep and meal breaks during the 24-hour "live-in" shifts as a home health aide. Her failure to follow the necessary protocol underscores that Plaintiff was not "employed" during the time complained of, that is, Avondale Care did not suffer or permit Plaintiff to work during the 11 hours of each shift Plaintiff now complains because Avondale *did not* have actual or constructive knowledge that Plaintiff forewent her breaks and supposedly

---

[1] While Avondale does not concede that it violated NYLL § 195(1) and failed to provide Plaintiff proper notification of Plaintiff's pay rate at the time of hire and annually thereafter, Avondale is unable to locate the documents and therefore does not contest Plaintiff's allegations that it failed to comply with N.Y. Lab. Law §§ 195(1)(a) and (c). Plaintiff is therefore entitled to no more than $5,000 in civil damages. N.Y. Lab. Law § 198 1-b. Although the Legislature increased the capped amount of recoverable damages from $2,500 to $5,000 on February 27, 2015, *see* NY Legis. 537 (2014), 2014 Sess. Law News of N.Y. Ch. 537 (A. 8106-C) (McKinney 2014)), the calculation of delinquent workdays under both standards ($20 per day pre-2015 and $50 per day post-2015) exceeds the capped amount. Accordingly, Plaintiff is entitled to $5,000 plus reasonable costs and attorney's fees.

continued working. *See Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008). Nor did Avondale violate *any* labor law. Accordingly, for the reasons discussed more fully below, the Court should grant summary judgment in Avondale's favor and dismiss the majority of claims against Defendants.

## II.   FACTUAL BACKGROUND

### A.   Avondale Care Group

Defendant Avondale Care Group, LLC d/b/a Avondale Care Group ("Avondale") is a licensed home care services agency that employs approximately 1,200 active home health aides. (Defendants' Separate Statement of Material Facts Pursuant to Local Rule 56.1 ("Def. SSMF"), ¶ 1.) The administrative structure at Avondale has several layers. Defendant Lorna Grazio is owner and Defendant Peter Carroll is President and owner. In addition Grazio and Carroll, various individuals oversee departments, ranging from billing & payroll, authorization and pre-billing, human resources, operations, and medical services and nursing. Approximately 60 individuals are employed in administrative positions. (Def. SSMF, ¶ 2.) Raina Van Dyke is the Director of Operations and she oversee the primary day-to-day operations of Avondale. (Def. SSMF, ¶ 3.) Given the size of the company, Avondale has sought and continues to seek legal counsel, advice, and opinion regarding the ever changing legal landscape of labor laws as they apply to the Home Health Care industry in order to comply with various Federal Labor Standards Act and New York Labor Law statutes and regulations, Avondale (Def. SSMF, ¶ 4.)

As a licensed home care services agency, Avondale employs home health aides, who provide "personal care services" under the supervision of a licensed nurse. "Personal care services means some or total assistance with personal hygiene, dressing and feeding; nutritional and environmental support functions; and health related tasks." The services the home health

aide is to provide "must be essential to the maintenance of the resident health and safety in his or her own home based on plan of care prepared by a nurse." (Def. SSMF, ¶ 5.)

Because Avondale employs home health aides and some of its contracts receive Medicare and/or Medicaid funding, Avondale participates in the Home Care Worker Wage Parity Act, as required by New York Law. Currently, the minimum cash portion that Avondale is required to pay employees is $11.00 per hour, with the benefit portion at a minimum rate of $4.09. Thus, Avondale's home health aide employees currently make at a minimum $15.09 per hour. Avondale is not required to directly pay the benefit portion to the employee if the benefit portion is paid directly into the benefits that the employees, including Plaintiff, receives. Avondale pays the benefit portion directly into the benefits for employees, thus the employees do not see the benefit portion in their wages. Employee benefits include paid time off (or vacation pay), sick time, and health insurance. (Def. SSMF, ¶ 6.)

Home health aides employed by Avondale work various types of shifts, including hourly shifts, such as eight- and twelve-hour shifts, and "live-in" shifts, where a home health aide is assigned a 24-hour shift to a patient at the patient's home. During the "live-in" 24-hour shift, the live-in aide works 13 hours and receives a total break period of 11 hours, which include eight hours of sleep, five of which is uninterrupted and three hours total of meal break. (Def. SSMF, ¶ 7.) For "Live-In" shifts, home health aides are paid a particular rate for the first three 24-Hour "Live-In" shifts, which comes to 39 hours (13 hours at three days). If the home health aide works additional "Live-In" shifts in a given a workweek, the rate for the subsequent shifts is increased to take into account overtime. These rates are based on the home health aide-employee taking the required breaks. If the home health aide-employee is unable to take the required breaks and immediately informs Avondale with accurate and specific records as to the specific occurrence,

Avondale will compensate the home health aide-employee for the additional time the home health aide-employee worked in excess to the 13 hours of a given "Live-In" shift. (Def. SSMF, ¶ 8.)

Per the Employee Handbook that every new home health aide hire receives, "live-in employees must be paid not less than for thirteen hours per twenty-four hour period provided that they are afforded at least eight hours for sleep and actually receive five hours of uninterrupted sleep, and that they are afforded three hours for meals." If the employee:

> do[es] not receive five hours of uninterrupted sleep, the eight-hour sleep period exclusion is not applicable and [the home health aide] as the employee must let [Avondale] know immediately so that [the home health aide] can [be] paid all eight hours. Similarly, if [the home health aide is] not actually afforded three work-free hours for meals, the three-hour meal period exclusion is not applicable and [the home health aide] must let [Avondale] know immediately so that [the home health aide] can be paid for this time.

(Def. SSMF, ¶ 9.)

In accepting employment with Avondale, the employee accepts the Live-In Agreement, which provides:

> The NY DOL advised the industry at a conference that it will enforce the 13-hour workday pay practice unless the employee has specific records showing that he/she was not afforded eight hours for sleep, five uninterrupted hours, and three uninterrupted hours for meals. In interpreting these provisions, it is the opinion and policy of [Avondale] that live-in employees must keep accurate and specific records and inform [Avondale] immediately if [the employee is] not getting the required breaks. If there is no specific and accurate records stating otherwise you must indicate your ability to take the requisite breaks by entering this information in to your Telephonic Duty Sheet and/or signed Timesheet.

The employee is informed that "[t]his Live-In Agreement is contractual, binding, enforceable, and cannot be changed by the employer." (Def. SSMF, ¶ 10.)

### B.    Plaintiff's Employment at Avondale Care Group

Plaintiff Delfina Rodriguez was hired as a certified home health aide at Avondale on May 11, 2011, after she completed an employment application, an orientation conducted by the

Human Resources Department, and passed background check as required by the Department of Health. (Def. SSMF, ¶ 11.) While Plaintiff claims her primary language is Spanish, that she understands very little English, and can read very little, if any English, she completed all required new hire paperwork in English. (Def. SSMF, ¶ 12.) To the extent Plaintiff needed assistance understanding English, the Human Resources Department at Avondale has employees who fluently speak English and Spanish, and assisted Plaintiff in understanding any documents before Plaintiff signed a given document, acknowledging receipt and understanding of that document. Accordingly, Plaintiff did not sign any document without first understanding it. (Def. SSMF, ¶ 13.)

Plaintiff acknowledged by signature that on the date of her hire she "received a copy of TAG Employee Handbook and will become familiar with the procedures, policies, and benefits and agree to comply with standards of conduct contained therein. If there is anything [she] do[es] not understand, [she] will request an explanation from a manager." (Def. SSMF, ¶ 14.) She also acknowledged by signature that she understood that "[p]ersonal care services means some or total assistance with personal hygiene, dressing and feeding; nutritional and environmental support functions; and health related tasks," and that the personal care services she is to provide "must be essential to the maintenance of the resident's health and safety in his or her own home based on plan of care prepared by a nurse." (Def. SSMF, ¶ 15.) At hire and throughout Plaintiff's employment, Plaintiff completed annual trainings, including taking and passing various tests prepared in English. Plaintiff signed these tests. (Def. SSMF, ¶ 16.)

Plaintiff was also trained how to clock in and out remotely by phone, and to identify her completed tasks during a given home health aide shift. Plaintiff also acknowledged by signature her understanding of the time management and billing compliance program at Avondale. The

program identifies that she must properly clock in and out, and code the tasks she completed when clocking out.  (Def. SSMF, ¶ 17.)

Plaintiff often worked 24-hour live in shifts,  she was at a given patient's residence for five or more days in a given week, and Plaintiff was provided adequate sleep lodging. (Def. SSMF, ¶ 18.) Plaintiff is aware of Avondale's sleep requirement policy for the 24-hour live in shifts. (Def. SSMF, ¶ 19.) When entering her tasks, Plaintiff often punched in codes 61 and 62, identifying completed tasks of various shifts (over 100 shifts) as "Live-In Received 8 hours of sleep […]" and "Live-In Received 3 hours of break time," respectively. (Def. SSMF, ¶ 20.) Plaintiff nonetheless claims that all these entries were entered in "error" or "accidently," and that they all are "mistakes." (Def. SSMF, ¶ 21.) Instead, Plaintiff apparently worked 144 hours on average weekly, (Def. SSMF, ¶ 22), although at her deposition, she stated that she had not said that she had worked 144 hours on average weekly. (Def. SSMF, ¶ 23.)

Per the Live-In Agreement to which Plaintiff agreed by acknowledging her receipt of the Employee Handbook and understanding of the policies and procedures contained therein, Plaintiff knew she needed to alert Avondale promptly if she was unable to take the required sleep and meal breaks, but Plaintiff failed to follow policies and procedures. (Def. SSMF, ¶ 24.) Moreover, Plaintiff understood that if she had any concerns with payroll, specifically if she believed she was not getting paid for time worked as a home health aide, she was to submit a Payroll Concern Form, and Plaintiff has filed forms in the past.  (Def. SSMF, ¶ 25.) But Plaintiff never submitted any Payroll Concern Forms to Avondale claiming that she was not receiving pay for time she supposedly worked during allotted sleep and meal breaks allocated in a 24-hour "live-in" shift. (Def. SSMF, ¶ 26.)

Indeed, before filing this instant law suit on April 15, 2016, Plaintiff never contacted anyone at Avondale and informed them that she was unable to take the required sleep and meal breaks when working Live-In shifts.[2] (Def. SSMF, ¶ 27.) After filing the instant law suit, Plaintiff continued to work 24-Hour "Live-In" shifts. (Def. SSMF, ¶ 28.) When Plaintiff was deposed on January 31, 2017, she stated that she could not sleep when caring for particular patients and asserted that she "never" slept. Upon being notified, Avondale assigned Plaintiff primarily to hourly shifts, ranging from 6- to 12-hour shifts, notwithstanding that Plaintiff had not previously alerted Avondale of these alleged times where she was unable to take her breaks.(Def. SSMF, ¶ 29.) Plaintiff is still an employee at Avondale. (Def. SSMF, ¶ 31.)

## III.   ARGUMENT

### A.   Legal Standard

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, summary judgment is appropriate where the moving party shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c); *see Celotex*, 477 U.S. at 322. "In deciding whether there is a genuine issue of material fact as to an element essential to a party's case, the court must examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quotation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party must show that no genuine issue exists as to any material fact. *Celotex*, 477 U.S. at 323-25.  "[T]he burden on the moving party may be discharged by 'showing'—that is,

_____

[2] Plaintiff subsequently filed an Amended Complaint on July 15, 2016, and Defendants filed their Amended Answer on August 5, 2016.

pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325 (rejecting a requirement that the party moving for summary judgment must produce evidence affirmatively establishing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof). Moreover, where the evidence offered on summary judgment establishes that an essential element of the nonmoving party's cause of action does not exist as a matter of law, all other contested issues of fact are rendered immaterial. *Id.* at 323.

If the moving party makes the requisite showing, the "non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996); *see also Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 256-57 (the non-moving party must present affirmative and specific evidence demonstrating that there is in fact a genuine issue for trial). "More specifically, it 'must do more than simply show that there is some metaphysical doubt as to the material facts,'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), "and 'may not rely on conclusory allegations or unsubstantiated speculation,'" *Id.* (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2010)). Indeed, the non-moving party must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008). When it is clear from the record "that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." *Greast Am. Ins. Co.*, 607 F.3d at 292 (quoting *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

**B.**     **<u>Avondale Complied with Minimum Wage and Overtime Laws Under the</u>**

            **<u>FLSA and NYLL</u>**

Avondale does not dispute that Plaintiff is covered by the minimum wage and overtime provisions of both the Fair Labor Standards Act ("FLSA") and the New York Labor Laws ("NYLL"). Where Plaintiff gets it wrong, however, is her oversimplification of the law in relation to the undisputed facts of this case. The FLSA and NYLL mandate that wage-employees be paid time and half for any hours worked in excess of forty hours in a given week, 29 U.S.C. § 207(a)) and N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2, and Avondale pays Plaintiff overtime when she works more than forty hours in a workweek. Plaintiff ultimately complains that she should have been paid, but was not, for the *full* 24 hours of a "live-in" shift, ignoring that the FLSA and NYLL specifically contemplates arrangements such as Avondale's "Live-In Agreement." Indeed, "the existence of a policy of automatically deducting time for scheduled breaks does not, by itself, violate the FLSA or NYLL." *Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*, No. 16-CV-541 (ARR)(JO), 2016 U.S. Dist. LEXIS 172767, at *15-16 (E.D.N.Y. Dec. 12, 2016) (citing *Mendez v. U.S. Nonwovens Corp.*, 314 F.R.D. 30, 49 (E.D.N.Y. 2016)).

Under the FLSA, "employees are not entitled to compensation during break periods when they are not working." *Mendez*, 314 F.R.D. at 49. And under New York law, "live-in employees must be paid not less than for thirteen hours per twenty-four hour period provided that they are afforded at least eight hours of sleep and actually receive five hours of uninterrupted sleep, and that they are afforded three hours for meals." N.Y. Dep't of Labor, Counsel Opinion Letter, RO-09-00169 Live-In Companions (March 11, 2010). Thus, contrary to Plaintiff's simplistic view that she must be compensated for the whole 24-hour period because "Defendants require

Rodriguez to remain with her patients, in her patients' homes" for a give 24-hour shift, (Dkt No. 51-4 at p. 8 of 15), Avondale's policy of scheduling twenty-four hour shifts does not *per se* entitle Plaintiff to compensation for the full 24-hour shifts. *See Bonn-Wittingham*, No. 16-CV-541 (ARR)(JO), 2016 U.S. Dist. LEXIS 172767, at *16 ("defendants' policy of scheduling twenty-four hour shifts did not necessarily entitle plaintiffs to compensation for the full twenty-four hours"); *Mendez*, 314 F.R.D. at 49-50 (same); *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 321 (E.D.N.Y. 2014) (same).

 Under the FLSA, regardless if Plaintiff would be deemed a "live-in domestic service employee," "[w]here an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep."[3] 29 C.F.R. § 785.22(a). Here, per the "Live-In Agreement," Avondale and Plaintiff agreed to exclude 11 total hours in a 24-hour "live-in" shift for sleep (eight hours) and meals (three hours), and Plaintiff admits she was provided adequate sleeping arrangements. (Def. SSMF, ¶¶ 10, 18, 24.) Such agreements are valid under the FLSA. *See Trocheck v. Pellin Emergency Med. Serv., Inc.*, 61 F. Supp. 2d 685 (N.D. Ohio 1999) (granting summary judgment to defendants because defendant-employer and plaintiff-employee had a valid agreement to exclude sleep and meal breaks for assigned 24-hour shifts); *Allen v. City of*

---

[3] "A live-in employee is one who (1) resides on the employer's premises on a permanent basis or for extended periods of time and (2) for whom the employer makes adequate lodging available seven days per week." Application of the Fair Labor Standards Act to Domestic Service, 78 F.R. 60454, 60474 (Oct. 31, 2013). "Extended periods of time" per the Department of Labor's existing policy are employees who work and sleep on the employer's premises for five days a week (120 hours or more)." *Id.* Plaintiff worked and slept at a number of her patients home for more than 120 hours in a given workweek (five or more days), and Plaintiff was provided adequate lodging. (Def. SSMF, ¶ 18.)

*Greenville*, No. 4:97CV-57-D-B, 1999 U.S. Dist. LEXIS 20207, at *12 (N.D. Miss. Dec. 16, 1999) (same).

Likewise, the NYLL contemplates that 24-hour "live-in" shifts, such as Plaintiff's assignments, can exclude up to 11 hours for sleep and meal breaks, "provided that they are afforded at least eight hours of sleep and actually receive five hours of uninterrupted sleep, and that they are afforded three hours for meals." N.Y. Dep't of Labor, Counsel Opinion Letter, RO-09-00169 Live-In Companions (March 11, 2010). A "live-in" employee would be a "residential employee," which is one "who live[s] on the premises of the employer." 12 N.Y. Comp. Codes R. & Regs. § 142-2.1(b)(1)-(2). The NYLL "does not provide that such employees must live with the employer full time." *Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*, No. 16-CV-541 (ARR)(JO), 2017 U.S. Dist. LEXIS 75286, at *9 (E.D.N.Y. May 17, 2017) (rejecting plaintiffs-employees contention that they are not "live-in" employees because they maintained their own residences).

Accordingly, Avondale had a valid policy in which Avondale excluded Plaintiff's sleep and meal breaks in accordance and compliance with the FLSA and NYLL.

C.   **Plaintiff Was Not "Employed" by Avondale as to any Hours in Access to the Compensable 13 Hours of Any Given "Live-In" Shift Because Avondale Care Had No *Actual* of *Constructive* Knowledge of Plaintiff's Claimed "Work" During Sleep and Meal Breaks**

To the extent Plaintiff was unable to take her sleep and meal breaks, as required under the "Live-In Agreement" between Plaintiff and Avondale, she is still not entitled to summary judgment. While Avondale disagrees that Plaintiff "never" slept and did not take her required breaks given Plaintiff often (and more than 100 times) identified that she had received her sleep

and meal breaks (Def. SSMF, ¶ 20), even if the Court was to find a disputed fact exists as to

whether Plaintiff always took her breaks, summary judgment in favor of Avondale is nonetheless

appropriate because Plaintiff was not "employed" for the additional 11 hours in a given 24-hour

"live-in" shift as Avondale did not "permit" or "suffer" that work.

      Under both the FLSA and NYLL, overtime is warranted only when the employer

"permitted or suffered" work by an employee. 29 U.S.C. § 203(g) ("Employ" is defined as

including "to suffer or permit to work," N.Y. Lab. Law, § 2(7); *see also* N.Y. Comp. Codes R. &

Regs., tit. 12 § 142-2.14 ("Employee means any individual employed, suffered or permitted to

work by an employer."). "[A]n employer's actual or imputed knowledge … is a necessary

condition to finding the employer suffers or permits that work." *Chao v. Gotham Registry, Inc.*,

514 F.3d 280, 287 (2d Cir. 2008); *see also Newton v. City of Henderson*, 47 F.3d 746, 748 (5th

Cir. 1995); *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986).

      While actual knowledge is not required, the employer must at a minimum have

constructive knowledge. *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998)

("constructive knowledge will suffice"); *see also* 29 C.F.R. § 785.11 ("Work not requested but

suffered or permitted is work time. . . . The employer *knows or has reason* to believe that [the

employee] is continuing to work and the time is working time.") (emphasis added). "[W]here an

employer has no knowledge that an employee is engaging in overtime work and that employee

fails to notify the employer or deliberately prevents the employer from acquiring knowledge of

the overtime work, the employer's failure to pay for the overtime hours is not a violation of §

207." *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981); *see also*

*Holzapfel*, 145 F.3d at 524 ("While an employer must pay for work it suffers or permits, see 29

C.F.R. § 785.11, an employer cannot suffer or permit an employee to perform services about

which the employer knows nothing.") Indeed, "[w]hen the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012).

Avondale's "Live-In Agreement" expressly provides that a home health aide, such as Plaintiff, *must* immediate notify Avondale if that employee was unable to take sleep and meal breaks during the 24-hour "live-in" shifts. (Def. SSMF, ¶¶ 10, 11.) This reasonable provision is a way to put Avondale on notice that an employee is working in excess of 13 hours and, accordingly, to suffer or permit that work to be done and pay the employee accordingly. But Plaintiff never followed procedure, and Plaintiff cannot dispute this. Plaintiff "fail[ed] to follow reasonable time reporting procedures [and] prevent[ed] [Avondale] from knowing its obligation [if any] to compensate [Plaintiff]." If anything, Plaintiff has "thwart[ed] the [Avondale's] ability to comply with the FLSA." *White*, 699 F.3d at 876. Accordingly, Avondale cannot be liable for Plaintiff's compensation for her supposed overtime hours because Avondale did not suffer or permit Plaintiff's work. *Chao*, 514 F.3d at 287 ("[Defendant-employer] is liable for the nurses' compensation for the overtime hours *only if* it employed the nurses during this time, that is, if it suffered or permitted the nurses to work.") (emphasis added). The Court should thus grant judgment in Defendants' in favor, as Defendants have not violated the FLSA and the NYLL.

### D.     Remaining NYLL Issues

#### 1.     Plaintiff Received Weekly Wage Statements in Compliance with NYLL § 195(3)

Plaintiff received from the beginning of her employment and continues to receive as a current employee weekly "Earning Statements," outlining the wage she earned, dependent on the

shift she completed, i.e., 24-hour "live-in" shift, or hourly, including specifying overtime wages when earned. (Def. SSMF, ¶ 31.) Even so, Plaintiff contends that that this was insufficient to "furnish [Plaintiff] with a statement with every payment of wages." N.Y. Lab. Law § 195(3). Plaintiff claims this is so, because Avondale did not list her hourly rate. While this is not true under all circumstances, as Plaintiff *did receive* a statement of her hourly rate when she worked an hourly shift, the statute is not limited to an hourly rate. Rather, the statement must include: "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, *shift*, *day*, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." *Id.* (emphasis added). When Plaintiff worked a 24-hour "live-in" shift, with 13 compensable hours, the statement identified the rate for the *shift*. And when Plaintiff worked more than three 24-hour "live-in" shifts, Plaintiff was provided with the rate for the additional shifts, which included overtime. (Def. SSMF, ¶ 31.) Accordingly, Avondale has complied, and continues to comply with New York Labor Law, § 195(3).

## 2.    Avondale Complies with the New York Home Care Wage Parity Act

Avondale does not dispute that at least part of Plaintiff's wages must take into account the New York Home Care Wage Parity Act because Plaintiff was assigned to some patients who receive Medicaid benefits. (Def. SSMF, ¶ 6.) *See* Public Health Law § 3614-c (The Act applies to "all episodes of care reimbursed in whole or in part by the New York Medicaid Program.") And Avondale agrees with Plaintiff's statement that "the minimum wage rates provided by the Act apply to some if not all of her work for defendants," (Dkt. No. 51-4 at p. 14 of 15), and

Avondale has done just that, (Def. SSMF, ¶ 6). Currently, Avondale pays Plaintiff $15.09 per

hour, though $4.09 is contributed to her employee benefits. (Def. SSMF, ¶ 6.)

While Plaintiff only argues that she is covered under the Act, and makes no attempt to

show Avondale violated the Act, (*see* Dkt. No. 51-4 at pp. 13-14 of 15), Plaintiff presumably

claims that she was not paid "the minimum wage provided by the Act" because she did not see

the benefit portion in her weekly pay. However, Avondale is not required to directly pay the

benefit portion to the employee if the benefit portion is paid directly into qualifying employee

benefits that the employees, including Plaintiff, receives.[4] Avondale complies with the Act by

paying the benefit portion directly into the benefits for employees, currently $4.09, thus, while

the employees make at a minimum $15.09 per hour, the employees do not see the benefit portion

in their wages.[5] (Def. SSMF, ¶ 6.) And Avondale provides "qualifying benefits" as the

employees' benefits include paid time off (or vacation pay), sick time, and health insurance. (Def.

SSMF, ¶ 6.) Accordingly, the Court should enter judgment in Avondale's favor as Plaintiff

cannot prove that Avondale violated the Wage Parity Act since Avondale in fact complies with

the Act.

### 3.  Plaintiff is Not Entitled to "Spread of Hours" Pay

The "spread of hours" provision of NYLL entitles employees who are paid at the

minimum wage to one additional hour of pay at the minimum hourly wage for each day they

---

[4] The N.Y. Department of Health provides guidance and clarification to employers in response to "frequently asked questions," one of which asked whether the employer can "credit" the benefit portion if the employer provides benefits. The Department explained that "[e]mployers who provide benefits can credit their costs to reduce the amounts that they would otherwise have to pay in wages." Home Care Worker Wage Parity, Frequently Asked Questions (FAQs) February 2012, *available at* https://www.health.ny.gov/health_care/medicaid/redesign/2012-02-17_worker_parity_faqs.htm (last visited September 1, 2017), *see* FAQ 14.

[5] Avondale need not pay additional monies to Plaintiff because Avondale contributes the required benefit portion towards qualifying benefits. *Id.*

worked over ten hours. N.Y. Lab. Law § 652; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4; *see Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339 (S.D.N.Y. 2005) ("New York law provides that covered employees, such as plaintiff, are entitled to an additional hour's pay at the basic minimum rate for any day in which "the spread of hours' . . . exceeds 10 hours."). But Plaintiff is not paid minimum wage. To date, Plaintiff is paid $15.09, as compliance with the New York Home Care Worker Wage Parity Act requires Avondale to pay its employees, including Plaintiff at a higher rate above minimum wage, discussed above. Accordingly, judgment as to this issue should be entered against Plaintiff since the "spread of hours" provision does not apply to Plaintiff.

### E.   The Individual Named Defendants Are Not Plaintiff's "Employer" under the FLSA or NYLL

In considering whether individual named defendants are "employers" the test for determining whether an entity or person is an "employer" is the same under New York State and Federal law because the definition of "employ" is the same under New York State and Federal law. *See Chu Chung v. New Silver Palace Rest., Inc.*, 272 F.Supp.2d 314, 318 n. 6 (S.D.N.Y. 2003); *see also Nuriddinov v. Masada III, Inc.*, No. 15 CV 5875 (KAM)(RML), 2017 U.S. Dist. LEXIS 116357, at *13-*14 (E.D.N.Y. July 24, 2017) ("[C]ourts in this Circuit regularly apply functionally identical tests to determine employer status under both the FLSA and NYLL.") (citing *Bedasie v. Mr. Z Towing, Inc.*, No. 13 CV 5453, 2017 WL 1135727, at *16 (E.D.N.Y. Mar. 24, 2017); *Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) (collecting cases); *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 284 (E.D.N.Y. 2013)).

When assessing "whether an individual within a company that undisputedly employs a worker is personally liable for damages as that worker's 'employer,'" *Irizarry v. Catsimatidis*, 722

F.3d 99, 105 (2013), the Court is to apply the four-factor "economic realities" test articulated in *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), and also consider "other factors bearing upon the overarching concern of whether the alleged employer possessed the power to control the workers in question." *Id.* (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). The *Carter* factors are: (1) "whether the individual defendant 'had the power to hire and fire employees'"; (2) "whether the individual defendant 'supervised and controlled employee work schedules or conditions of employment'"; (3) "whether the individual defendant 'determined the rate and method of payment'"; (4) "whether the individual defendant 'maintained employment records.'" *Irizarry*, 722 F.3d at 114-16. And "other factors" include "operational control," i.e. an individual defendant's possession of "control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Id.* at 109.

While Plaintiff cites the *Carter* factors and simply concludes that the fact that Defendants Grazio and Carroll meet two of the factors, that is they each have "the authority to hire, fire, and determine the pay rate of home health aides, including Rodriguez," (Dkt No. 51-4 at pp. 12-13 of 15), and that Defendants Grazio and Carroll are "responsible for overseeing Avondale as a whole," Plaintiff fails to explain *how* the mere two factors and apparent broad "oversight" meets the threshold of "employer" status. The fact that the Defendants Grazio and Carroll *could* hire and fire and determine the pay rate of Avondale's employees is not dispositive. *Irizarry*, 722 F.3d at 115 ("This — like all *Carter* factors — is not dispositive"); *see also Gray v. Powers*, 673 F.3d 352, 354-57 (5th Cir. 2012) (co-owner not "employer" despite being a signatory on the corporate account and "occasionally sign[ing] several pages of pre-printed checks."). Indeed, absent evidence of "substantial authority" and "significant control" over the employees, the fact that Defendants Grazio and Carroll *can* hire and fire and determine pay rates does little more than

show they are owners of Avondale. *See Graziadio v. Culinary Inst. of America*, 817 F.3d 415 (2d Cir. 2016); *Haybarger v. Lawrence County Adult Prob. & Parole*, 667 F.3d 408 (3d Cir. 2012).

Further, Plaintiff fails to produce any evidence that these Defendants' "possession of control over [Avondale's] actual operations [was] in a manner that relates to a plaintiff's employment," because Plaintiff cannot. *Irizarry*, 722 F.3d at 109. Plaintiff simply points to the owners of Avondale in hopes to attach liability for alleged violations of labor laws, but "[e]vidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status." *Id.* Rather, "[a] person exercises operational control over employees if his or her role within the company, and the decisions it entails, *directly affect* the nature or conditions of the employees' employment." *Id.* at 110 (emphasis added). The analysis "require[s] some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation—even if this appears to establish a higher threshold for individual liability than for corporate 'employer' status." *Id.* at 109.

Plaintiff produced *no* evidence of Defendants Grazio and Carroll's individual involvement, much less that there "over[sight] of Avondale as a whole" "affects employment-related facts such as workplace conditions and operations, personnel or compensation." *Id.* Avondale has several separate and distinct departments, ranging from billing & payroll, authorization and pre-billing, human resources, operations, and medical services and nursing. with management (not Defendants Grazio and Carroll) who oversee those departments. (Def. SSMF, ¶ 2.) Indeed, Plaintiff does not even know who Defendants Grazio and Carroll are, and reported primarily to coordinators and supervisors. (Def. SSMF, ¶ 30.)

Plaintiff simply makes the leap that "because [the individual defendants held positions as [owners], then each must have had authority to take the actions that comprise the 'economic realities' test, and that because each had the authority to take those actions, then each must have in fact taken those actions.'" *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, No. 11 CIV. 6366 (PAC), 2012 WL 3886555, at *12 (S.D.N.Y. Sept. 6, 2012) (quoting *Tracy v. NVR, Inc.*, No. 04-CV-6541L (MWP), 2009 WL 3153150, at *5 (W.D.N.Y. Sept. 30, 2009)).  But "[t]o accept the adequacy of these allegations," without *any* proof, "'would license suit under the FLSA [and the NYLL] against every high level officer and board member of large [] companies simply because of the position the individual holds.'"[6] *Id.* (quoting *Tracy*, 2009 WL 3153150, at *5). Accordingly, summary judgment must be granted in favor of Defendants Grazio and Carroll, and the Amended Complaint dismissed as to them.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[6] While the *Nakahata* court considered the adequacy of a complaint in the face of a 12(b)(6) motion (and granted defendants' motion and entered judgment against plaintiffs), the analysis equally applies here where there is no evidence and only bald assertions.

IV.     <u>**CONCLUSION**</u>

For the foregoing reasons, the Court should deny Plaintiff's motion for summary

judgment and grant Defendants' cross-motion for summary judgment, and dismiss the Amended

Complaint and enter judgment in favor of Defendants AVONDALE CARE GROUP, LLC d/b/a

AVONDALE CARE GROUP, PETER CARROL, and LORNA GRAZIO.

DATED:    New York, New York
          September 1, 2017

                              MANNING & KASS
                                ELLROD, RAMIREZ, TRESTER LLP


                              By: /s/ Jeanette L. Dixon
                                  Jeanette L. Dixon
                                   *jld@manningllp.com*

                              One Battery Park Plaza, 4th Floor
                              New York, New York 10004
                              (212) 858-7769

                              Attorneys for AVONDALE CARE GROUP,
                                  LLC., PETER CARROLL and LORNA
                                  GRAZIO