UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

DELFINA RODRIGUEZ,

                                   Plaintiff,                         16-CV-03084 (SN)

                    -against-                                        <u>OPINION & ORDER</u>

AVONDALE CARE GROUP, LLC, et al.,

                                   Defendants.

-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___ 3/27/2018

**SARAH NETBURN, United States Magistrate Judge:**

Plaintiff Delfina Rodriguez is a certified home health aide who works at Avondale Care

Group, LLC ("Avondale"). She alleges that defendants' compensation practices violate the Fair

Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), the New York Labor Law § 650 et seq.

("NYLL"), and the New York Home Care Worker Wage Parity Act, N.Y. Pub. Health Law §

3614-c ("WPA"). Both parties move for summary judgment. Plaintiff's motion is granted in part

and denied in part. Defendants' motion is granted in part and denied in part.

## FACTUAL BACKGROUND

The following facts are undisputed except where otherwise indicated. Since May 11,

2011, Avondale has employed plaintiff Rodriguez as a certified home health aide who cares for

its clients in their homes. SMF ¶ 1; Van Dyke Dep. 53-55. SMF ¶ 7; Rodriguez Aff. ¶ 3. As a

home health aide, Rodriguez would often work 24-hour "live-in shifts," which required her to be

in a patient's home for 24 hours to provide care and household assistance. SMF ¶¶ 8, 9, 47, 49.

When Rodriguez worked a 24-hour live-in shift, she was paid for 13 hours and expected to take

sleep and meal breaks for 11 hours. SMF ¶ 52. Her rate of pay varied depending on how many

24-hour live-in shifts she completed in a week: for the first three 24-hour shifts, she was paid $130 per shift (or $10/hour for 13 hours); for the fourth shift, she was paid $190 per shift; and for the fifth and any subsequent shift, she was paid $195 per shift. SMF ¶ 52. The parties contest whether Rodriguez was provided with earnings statements outlining, *inter alia*, her rates of pay (overtime and regular) and hours worked. SMF ¶ 54; Van Dyke Dep. 75; Counter-SMF ¶ 31; Dixon Affirm. ¶ 14, Ex. M.

Defendants assert that upon hiring, Rodriguez received an Employee Handbook detailing the requirements for live-in health aides. Counter-SMF ¶ 9; Dixon Affirm., ¶ 4, Ex. C; Viar Aff., ¶¶ 3-5, Ex. O; Madrid Aff. ¶ 5, Ex. 3. The Employee Handbook produced by defendants in discovery includes a "Live-In Agreement," which is "contractual, binding, enforceable, and cannot be changed by the employer." The Live-In Agreement provides that employees who are assigned 24-hour shifts must be afforded eight hours for sleep (with five uninterrupted) and three work-free hours for meals. If an employee is unable to achieve these breaks, she must notify Avondale "immediately," and the employee will be paid for this time. The Live-In Agreement recognizes that the "NY DOL . . . will enforce the 13-hour workday pay practice unless the employee has specific records showing that he/she was not afforded eight hours for sleep, five uninterrupted hours, and three uninterrupted hours for meals." By recognizing this policy, Avondale requires that its "live-in employees must keep accurate and specific records and inform the Agency immediately if you are not getting the required breaks." It further provides that an employee "must indicate your ability to take the requisite breaks by entering this information in to your Telephonic Duty Sheet and/or signed Timesheet." Rodriguez disputes that she received this Handbook upon hiring. But she did sign a form acknowledging her receipt of the Handbook on May 11, 2011. Dixon Affirm., ¶ 5, Ex. D.

The parties agree that Rodriguez received certain documents and took examinations upon hiring, but disagree whether Rodriguez understood them due to her limited English proficiency. Counter-SMF ¶¶ 14-15; Rodriguez Dep. 74-77. Rodriguez was trained how to clock in and out using defendants' system. Counter-SMF ¶ 17; Dixon Affirm. ¶ 9, Ex. H., Rodriguez Depo. 39-41. This reporting system allows Avondale to monitor its employees' work remotely. Code 61 indicates that a live-in employee had eight hours of sleep with five uninterrupted, and code 62 indicates that a live-in employee received three hours for meal breaks. Rodriguez often entered codes 61 and 62 into this system indicating that she took her meal and sleep breaks, though she claims that these entries were in error. Counter-SMF ¶¶ 20-21; Dixon Affirm. ¶ 11, Ex. J.; Dixon Affirm. ¶ 9, Ex. H., Rodriguez Dep. 83-84; Rodriguez Reply Aff. ¶ 7. There is no evidence that Rodriguez submitted "accurate and specific records" demonstrating her inability to take her required breaks. Rodriguez has, however, submitted documentation, known as Payroll Concern Forms, to Avondale to correct other types of errors in her paychecks. Counter-SMF ¶ 25; Dixon Affirm. ¶ 13, Ex. L. Rodriguez denies that she was ever able to sleep for five hours without interruption or for eight hours total during her shifts. SMF ¶¶ 50, 51; Rodriguez Aff. ¶¶ 11, 12.

The parties dispute whether she lived in the homes of her patients during her shifts, though defendants do not cite any evidence in the record to show that she does. SMF ¶ 6; Counter-SMF ¶ 18. Rodriguez maintains a personal residence. SMF ¶ 4; Rodriguez Aff. ¶ 4.

Defendant Peter Carroll is a co-owner and business manager of Avondale Care Group. SMF ¶ 18; Amended Compl. ¶ 6; Answer to Amended Compl. ¶ 6. His title is President. SMF ¶ 20; Van Dyke Dep. 53. He has the authority to hire and fire Rodriguez and to determine her rate of pay. SMF ¶¶ 22, 23; Van Dyke Dep. 53. Defendant Lorna Grazio is a co-owner and staff manager of Avondale Care Group. SMF ¶ 24; Amended Compl. ¶ 7; Answer to Amended

Compl. ¶ 7. Her title is Chief Executive Officer. SMF ¶ 25; Van Dyke Dep. 53. She has the authority to hire and fire Rodriguez and to determine her rate of pay. SMF ¶¶ 22, 23; Van Dyke Dep. 54. Together, Grazio and Carroll are responsible for overseeing Avondale operations. SMF ¶ 27; Van Dyke Dep. 54. Approximately 20 individuals are employed in administrative positions, such as operations and billing & payroll. Counter-SMF ¶ 2; Van Dyke Affirm. ¶ 3.

## LEGAL STANDARD

### I.  Summary Judgment

Under Federal Rule of Civil Procedure 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). The moving party bears the initial burden of establishing that there are no material facts in dispute and must provide "affirmative evidence" from which a factfinder could return a verdict in its favor. <u>Id.</u> at 257. Then "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 273 (2d Cir. 2006). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." <u>Gallo v. Prudential Residential Servs., LP</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).

In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the non-moving

party. See Scott v. Harris, 550 U.S. 372, 378 (2007). Summary judgment is improper if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). To create a disputed fact sufficient to deny summary judgment, the non-moving party must point to evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). Instead, the response "must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation and internal quotation marks omitted).

## II.     Statutory Overtime Framework

The parties agree that Rodriguez is covered by the overtime provisions of the FLSA and the NYLL. Covered employees who work in excess of a 40-hour workweek are due wages at time and a half their standard rate for those overtime hours. 29 U.S.C. § 207(a); 12 N.Y.C.R.R. § 142-2.2. Rodriguez often worked 24-hour live-in shifts, where she ate and slept at her patient's residence. Rodriguez seeks compensation for all 24 hours in a live-in shift because she worked each hour and because she was never able to take her allotted break time.

### A.     Overtime under the FLSA

The general rule under the FLSA is that work is "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." Singh v. City of New York, 524 F.3d 361, 367 (2d Cir. 2008) (quoting Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602 (1944)). "However, exertion is not necessarily required for an activity to be compensable because 'an employer, if he chooses, may hire a man to do nothing, or to do

nothing but wait for something to happen.'" Id. (quoting Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944)). The time spent "perform[ing] activities predominantly for the benefit of the employer" is compensable. Reich v. S. New England Telecommunications Corp., 121 F.3d 58, 64 (2d Cir. 1997).

While exemptions to this rule exist, "because the statute is remedial, [they] are to be narrowly construed against the employers seeking to assert them." Brown v. New York City Dep't of Educ., 755 F.3d 154, 163 (2d Cir. 2014). One such exception provides that "[w]here an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. . . . Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked." 29 C.F.R. § 785.22(a). Scheduling a 24-hour shift, therefore, does not "necessarily entitle plaintiffs to compensation for the full twenty-four hours." Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc., No. 16-CV-541 (ARR)(JO), 2016 WL 7243541, at *5 (E.D.N.Y. Dec. 14, 2016); see also Desilva v. N. Shore-Long Island Jewish Health Sys., Inc., 27 F. Supp. 3d 313, 321 (E.D.N.Y. 2014) (deducting meal breaks from time worked was not "*per se* illegal").

Thus, under the FLSA, Rodriguez is required to be paid for all 24 hours in a shift, unless Avondale can establish an enforceable agreement to exclude sleep and meal time and that Rodriguez took such break time.

**B.**      **Overtime under New York Labor Law**

Before October 2017, New York Labor Law regarding live-in home health aides who worked a 24-hour shift was unsettled. Under a prior version of the governing regulation, New York law provided that the "minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer" unless that person was "a residential employee—one who lives on the premises of the employer," in which case such residential employee will not be deemed to be permitted to work during sleeping hours or other breaks. 12 N.Y.C.R.R. § 142-2.1(b). Thus, New York's regulation appeared to mandate that whether an employee who worked 24 hours would be paid for all of those hours varied based on an employee's residential status. See Carrasco v. Life Care Servs., Inc., No. 17-CV-5617 (KBF), 2017 WL 6403521, at *5 (S.D.N.Y. Dec. 15, 2017).

On March 11, 2010, the New York Department of Labor issued an Opinion Letter suggesting that residential status was not determinative of the governing minimum wage requirements. N.Y. St. Dep't of Labor, Op. No. RO-09-0169 at 4 (Mar. 11, 2010). The NYDOL stated that it was the "opinion and policy of this Department that live-in employees must be paid not less than for thirteen hours per twenty-four hour period provided that they are afforded at least eight hours for sleep and actually receive five hours of uninterrupted sleep, and that they are afforded three hours for meals." Id. The NYDOL expressed its view that residential status did not affect how to calculate the number of hours a live-in employee worked. Thus, it appeared that the NYDOL intended for New York's minimum wage law to apply to 24-hour shifts in the same manner as the FLSA.

State courts have roundly rejected this interpretation, holding uniformly that the NYDOL's interpretation is irreconcilable with the plain language of New York's minimum wage

law. See, e.g., Andryeyeva v. New York Health Care, Inc., 153 A.D.3d 1216, 1218-19 (2d Dep't 2017) (the Opinion Letter was "neither rational nor reasonable, because it conflicts with the plain language" of the relevant rule, and holding that non-residential live-in employees "were entitled to be paid the minimum wage for all 24 hours of their shifts, regardless of whether they were afforded opportunities for sleep and meals"); Tokhtaman v. Human Care, LLC, 149 A.D.3d 476, 477 (1st Dep't 2017) (a non-residential live-in employee is entitled to compensation for all twenty-four hours of her shifts). The New York Court of Appeals has not addressed this precise issue, but it has "spoken decisively on the subject of deference to agency interpretations of the statutes they enforce." Shillingford v. Astra Home Care, Inc., et al., 16 Civ. 6785 (KPF), 2018 WL 1033243, *10 (Feb. 23, 2018, S.D.N.Y.) (citing cases). The Court of Appeals grants agencies deference in construing statutes that they enforce so long as their interpretation is not "irrational or unreasonable." And it has instructed New York courts to "tread gently in second-guessing the experience and expertise of state agencies charged with administering statutes and regulations." Entergy Nuclear Operations, Inc. v. N.Y. State Dep;t of State, 28 N.Y.3d 279, 289 (2016) (citations omitted).

In contrast to the state courts, the federal courts have deferred to the NYDOL's guidance and calculated the hours worked under New York's minimum wage law without regard to residential status. See, e.g., Severin v. Project Ohr, Inc., 10 Civ. 9696 (DLC), 2012 WL 2357410 (June 20, 2012, S.D.N.Y.) (deferring to NYDOL); Carrasco, 2017 WL 6403521, at *5 (same); Shillingford, 2018 WL 1033243 (Feb. 23, 2018, S.D.N.Y.) (same).

Recognizing this conflict, the NYDOL promulgated an emergency regulation on October 25, 2017 (while this motion was pending). The NYDOL amended the New York minimum wage regulation to add:

> Notwithstanding the above, this subdivision shall not be construed to require that the minimum wage be paid for meal periods and sleep times that are excluded from hours worked under the Fair Labor Standards Act of 1938, as amended, in accordance with sections 785.19 and 785.22 of 29 C.F.R. for a home care aide who works a shift of 24 hours or more.

12 N.Y.C.R.R. §142-2.1(b). The NYDOL explained that the amendment was "necessary to preserve the status quo, prevent the collapse of the home care industry, and avoid institutionalizing patients who would be cared for at home, in the face of recent decisions by the State Appellate Divisions[.]" 10/25/17 N.Y. St. Reg. LAB-43-17-00002-E. Explicitly rejecting Tokhtaman and other state court decisions, the NYDOL was emphatic: "The purpose and intent of this rulemaking is to narrowly codify the Commissioner's longstanding and consistent interpretation that compensable hours worked under the State Minimum Wage Law do not include meal periods and sleep time of home care aides who work shifts of 24 hours or more." Id.

Thus, it is clear that *after* October 25, 2017, Rodriguez is not entitled under New York law to pay for hours during a 24-hour shift when she was actually on a sleep or meal break. And, in light of the NYDOL's policy statement issued coincident with its emergency promulgation, and for the reasons stated by other federal district courts that have considered this issue, the Court holds that the same statutory regime applies for her term of employment *before* the amendment to the law. See, e.g., Carrasco, 2017 WL 6403521, at *7; Bonn-Wittingham, 2017 WL 2178426, at *2; Severin, 2012 WL 2357410, at *8. The Court is mindful that an intermediate state appellate court's reasoned judgment should not be "disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940). But given the above, the Court

concludes that the Court of Appeals is unlikely to follow the <u>Tokhtaman</u> line of cases. <u>Accord</u> <u>Bonn-Wittingham</u>, 2017 WL 2178426.

Thus, the Court applies the same standard for determining wages owed under the New York minimum wage law as it does under the FLSA.

## III. Overtime Discussion

### A. The Live-in Agreement

Because both the FLSA and the NYLL allow employers and employees to agree to exclude meal and sleep breaks from compensated work time, the Court considers whether there is a genuine dispute of material fact as to the existence of such an agreement.

It is undisputed that the version of the Handbook produced in discovery includes a "Live-In Agreement" that explains the 13 hour/11 hour pay policy for 24-hour shifts. The Handbook states that the Live-In Agreement is "contractual, binding, [and] enforceable. . . ." Rodriguez argues that the Live-In Agreement is not enforceable because (i) she never received the Handbook with the Live-In Agreement; (ii) even if she did receive it, the Handbook is not an employment contract; and (iii) regardless, her language barriers preclude her from entering such an agreement. The Court rejects these arguments.

Although Rodriguez denies that she received an Employee Handbook with the Live-In Agreement, she signed an acknowledgment that she received a copy of the Handbook. Rodriguez raises the possibility that the Handbook produced in discovery may not be the same version that she received during orientation, but does not provide any evidence to suggest that the Live-In Agreement changed between versions. Avondale provides the affidavit of a manager who states that the Live-in Agreement did not change between versions. Viar Aff., ¶¶ 3-5. Accordingly,

there is no genuine dispute regarding whether Rodriguez received the Handbook that contained the Live-In Agreement.

Second, Rodriguez argues that the Handbook cannot form the basis of an employment contract. The Handbook states that it "is not a contract of employment, *with the exception of "The Live-in Agreement*. . . ." LaMadrid Affirmation, Ex. 3, at DEF001363 (emphasis supplied). The Handbook Acknowledgement Form that Rodriguez signed, however, states that "nothing in the Handbook constitutes an employment contract or promise between [The Avondale Care Group] and me." Dixon Affirmation, Ex. D, at DEF-00303.

In the arbitration context, "[c]ourts in this district routinely uphold [] agreements contained in employee handbooks where . . . the employee has signed an acknowledgment form." Patterson v. Raymours Furniture Co., 96 F. Supp. 3d 71, 76 (S.D.N.Y. 2015) (quotations omitted) (collecting cases); see also Arakawa v. Japan Network Grp., 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) (same). The rationale is the same with the Live-in Agreement because "[u]nder New York law, a party who signs a contract is 'conclusively presumed to know its contents and to assent to them.'" TufAmerica, Inc. v. Codigo Music LLC, 162 F. Supp. 3d 295, 324 (S.D.N.Y. 2016) (quoting State Bank v. Star Diamonds, Inc., 901 F. Supp. 177, 179 (S.D.N.Y. 1995)). Because the Live-in Agreement specifically notes that it is binding on Avondale and its employees, it trumps the Acknowledgment Form's general disclaimer to the contrary. See also Isaacs v. OCE Bus. Servs., Inc., 968 F. Supp. 2d 564, 571 (S.D.N.Y. 2013) (holding that a contractual provision in an employee handbook "contradicts the disclaimer in the Employee Handbook's introduction and is sufficient to establish that the [provision] is distinguishable from any non-binding or non-mutual sections of the handbook"). Accordingly, the Court will enforce the Live-In Agreement absent a showing that it was not entered into lawfully.

Rodriguez contends that her limited English proficiency meant that she was unable to understand the contract despite signing the Acknowledgment Form, such that there was no mutual assent. But a party remains contractually bound even "where the signer's failure to understand the terms of the contract stems from the signer's illiteracy or other language barriers." Suqin Zhu v. Hakkasan NYC LLC, No. 16 Civ. 5589 (KPF), 2017 WL 5713220, at *5 (S.D.N.Y. Nov. 28, 2017); see also Horvath v. Banco Comercial Portugues, S.A., No. 10 Civ. 4697 (GBD), 2011 WL 666410, at *4 (S.D.N.Y. Feb. 15, 2011) (collecting cases). Barring coercion or fraud—and there is evidence of neither here—a signed contract is enforceable. Isaacs, 968 F. Supp. 2d at 569.

Accordingly, the Court will enforce the Live-In Agreement.

## B.      Application of the Live-in Agreement

The Live-In Agreement requires an employee who works a 24-hour shift to:

> keep accurate and specific records and inform the Agency if you are not getting required breaks. If there are no specific and accurate records stating otherwise you must indicate your ability to take the requisite breaks by entering this information in to your Telephonic Duty Sheet and/or signed Timesheet.

Handbook, at DEF001375. The telephonic reporting system allows an employee to report, in minute detail, which activities she performed with her patients. Two of these codes record whether the employee was able to take sleep and meal breaks: Code 61 ("Live-In Received 8 hours of sleep including 5 inte" [sic]); and Code 62 ("Live-In Received 3 hours of break time"). Counter-SMF ¶¶ 20-21; Ex. J to Dixon Affirm.

The summary judgment record reflects that on more than 100 occasions, Rodriguez entered the required code through the Telephonic Duty Sheet to indicate that she did, in fact, take her sleep and meal breaks. But on other 24-shifts, she failed to so indicate. On all occasions when she worked a 24-hour shift, she was paid only for 13 hours of work. Rodriguez claims that

the times she reported that she took her breaks were in error and that when she did not report that she took her breaks, it was because she did not actually take them. She further argues that Avondale cannot assign to her the duty to maintain accurate time records. Avondale responds that it did not know she was working during the 11-hour break periods because Rodriguez never provided records or complained.

"Once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." Kuebel v. Black & Decker Inc., 643 F.3d 352, 363 (2d Cir. 2011). That said, "[f]or compensation to be awarded, plaintiff's activities must not only satisfy the above definition of work, but must also be performed with the employer's knowledge." Holzapfel v. Town of Newburgh, N.Y., 145 F.3d 516, 524 (2d Cir. 1998).

Avondale denies knowledge that Rodriguez worked any overtime. It argues that it clearly communicated a policy prohibiting improper pay practices—that is, an employee will be paid for all 24 hours if she is unable to attain her 11 hours of break periods—and created a procedure for employees to seek full pay and a mechanism to report payroll problems. See Dixon Aff. at Ex. L ("Payroll Concern Forms"). Essentially, Avondale raises an avoidable consequences affirmative defense in the wage-and-hour context. See Avondale Br. at 12 citing Newton v. City of Henderson, 47 F.3d 746, 748 (5th Cir. 1995) (affirming judgment to City-employer where employee failed to comply with overtime approval requirements), and Davis v. Food Lion, 792 F.2d 1274, 1277 (4th Cir. 1986) (affirming trial court finding that employer did not have actual or constructive knowledge of overtime work where employee "deliberately acted in such a way to prevent his employer from acquiring knowledge of his alleged uncompensated overtime hours").

Avondale faces two problems in raising this defense. First, its policy is entire opaque as to what "specific and accurate records" Rodriguez would need to present in order to prove that she did not take her breaks while working at 24-hour shift at a patient's residence. Avondale's corporate designee merely stated that an employee should first input into the system that they were unable to take the break (presumably in the manner that Rodriguez did by *not* entering the break codes), then the employee is required to "submit accurate and specific documentation as to why they did not receive [a] break." <u>See</u> Madrid Affirm. Ex. 4, Van Dyke Dep. at 145. While Avondale is plainly at a disadvantage in creating accurate time records when its employees work offsite, it cannot assign that duty to its employees without any guidance of what is expected. Would Avondale expect an affidavit of the patient? What about video evidence? Regular email communication?

But more fundamentally, Avondale has constructive knowledge that Rodriguez was unable to take her required breaks because she did not report that she took them. <u>See</u> <u>Holzapfel</u>, 145 F.3d at 524 ("constructive knowledge will suffice"); <u>see also</u> 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time. . . . The employer knows or has reason to believe that [the employee] is continuing to work and that the time is working time.") Once Avondale was on notice that Rodriguez did not report her breaks, it could not deny her payment based on Rodriguez's failure to comply with a vague policy that otherwise shifts the burden to the employee to maintain time records.

Avondale denies constructive notice by arguing that the coding system is intended to prevent fraudulent billing, and that it is not an accurate time record for its employees. Df.'s Reply Mem. of Law at 10. This lawyer's argument squarely contradicts the deposition of Avondale's corporate designee, who explained that this system constituted the first part of the

two-step process to notify Avondale that an employee had to work over a break. See Van Dyke

Transcript at 141-42; Duty Sheets at Ex. J. Indeed, this telephonic reporting system appears to be

explicitly described in the Live-in Agreement. Handbook, at DEF001375 ("[Y]ou must indicate

your ability to take the requisite breaks by entering this information in to your Telephonic Duty

Sheet."). Because Avondale monitored this system to ensure its employees input their breaks, it

was on notice that Rodriguez may have worked during her breaks when she failed to code 61 and

62 during a shift. Whether Rodriguez actually intended to omit these codes is irrelevant; her

failure to do so should have led Avondale to investigate why she did not input them during

certain shifts.

 Because Avondale was on notice that Rodriguez was unable to take her required breaks

and failed otherwise to maintain adequate records regarding her time worked, she may establish

the hours she worked "based on [her] own recollection." Kuebel, 643 F.3d at 362. "The burden

then shifts to the employer to come forward with evidence of the precise amount of work

performed or with evidence to negative the reasonableness of the inference to be drawn from the

employee's evidence." Id. (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686–87

(1946), superseded by statute on other grounds as explained in Integrity Staffing Sols., Inc. v.

Busk, 135 S. Ct. 513, 516 (2014). Rodriguez testified that she always had to work during her

meal and sleep breaks. She testified that she was never relieved from work during those breaks,

did not receive "adequate" sleeping facilities, and could not enjoy an interrupted night's sleep.

Rodriguez further testified that even when she recorded codes 61 and 62, she did so in error.

 Defendants are unable to produce any evidence to show that Rodriguez took her sleep

and meal breaks even when she failed to input codes 61 and 62. Instead, they argue that

Rodriguez knew how to complain about payroll errors and never did with regards to 24-hour

shift pay. Thus, this issue ultimately is a credibility contest. The fact-finder is entitled to hear the parties' testimony and determine whether they believe that Rodriguez never took her allotted breaks, including when she reported that she did. At a trial, the Court will instruct the jury that, in the absence of records from the employer, the jury may favorably weigh Rodriguez's testimony to establish her work hours.

A second issue exists as to whether her sleeping quarters were adequate. The only evidence in the record about Rodriguez's sleeping arrangements is her testimony that she slept in a small bed in her patients' living room. Avondale argues that this is adequate; Rodriguez disagrees. This is a genuine dispute of material fact that requires resolution by the ultimate fact-finder.

## IV.    Remaining NYLL Issues

### A.      NYLL § 195

New York Labor Law § 195(3) requires qualifying New York employers to furnish each employee with a statement with every payment of wages that includes certain specific items. These include, among other things, an employee's rate or rates of pay and basis thereof, and whether the employee is paid by the hour, shift, day, or week. "For all employees who are not exempt from overtime compensation"—which includes Rodriguez—the wage statement must also include "the regular hourly rate or rates of pay;  the overtime rate or rates of pay;  the number of regular hours worked, and the number of overtime hours worked." N.Y. Lab. Law § 195(3).

Avondale provides a wage statement that complies substantially with the general requirements of the wage statement notice law. Although somewhat unclear, the wage statement can be understood to provide the number of 24-hour live-in "shifts" and, with some simple

16

arithmetic, one can deduce the rate of pay. For example, one wage statement indicates "3 hours" and an amount of "$390," reflecting three "shifts" at $130 per shift, and then "1 hour" and an amount of "$190," reflecting a fourth shift at the higher rate. Avondale argues that this statement complies with § 195(3) because Rodriguez is paid by the shift, and the statement has her correct shift rate.

But Rodriguez is not exempt from overtime compensation, and therefore the law requires that the wage statement provide the number of hours she worked and her regular and overtime rate of pay, *even if she is ordinarily paid by shift*. Her shift pay assumes a $10 hourly rate and a $15 overtime rate. And when she works four shifts (and assuming she works only 13 hours), she is paid pursuant to this rate; that is, when she works 52 hours (13 hours x 4 shifts), she is paid $400 for the first 40 hours, and $180 for the 12 hours of overtime (for a total pay of $580). But instead of reflecting regular hours and overtime hours, her wage statement reflects only shifts: $390 for the first three shifts, and $190 for the fourth shift (for a total pay of $580). Although Avondale has complied with the overtime laws as far as her payment goes, the statute does not offer relief to an employer who pays an employee properly even though it fails to comply with the strict requirements of the wage statement law. Accordingly, Rodriguez is granted summary judgment on her claim for statutory damages under Section 195(3), which shall not exceed $5,000.

In addition, Avondale concedes liability as to New York Labor Law § 195(1). Df.'s Mem. of Law at 1 & n.1. Judgment is entered in Rodriguez's behalf on this claim as well, for statutory damages in the amount of $5,000.

## B.  Spread of Hours Pay

The New York regulations also require an employer to pay "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours exceeds 10 hours[.]" 12 N.Y.C.R.R. § 142-2.4. "Spread of hours" is "the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty." Id. § 142-2.18. While not explicit from the statutory text, courts have generally followed a Department of Labor Opinion letter that limits the rule's application to employees who earn only the minimum wage. Almeida v. Aguinaga, 500 F. Supp. 2d 366, 369-70 (S.D.N.Y. 2007) (collecting cases); but see Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 339 (S.D.N.Y. 2005) (N.Y.C.R.R. § 142-2.4 applies to all employees based on a plain reading of the statutory language).

The parties agree that Avondale at times paid Rodriguez above the minimum wage for 13 hours of her live-in shift. The New York minimum wage did not exceed $10/hour until December 31, 2017. Rodriguez, however, maintains that because her shift was actually 24 hours, her effective hourly wage was much lower and she is due spread of hours pay. Defendants respond that even if Rodriguez is entitled to pay for a full 24-hour shift, her regular rate of pay would remain $10 per hour, and $15 per hour for overtime. On those days, Avondale would be required to pay the appropriate rate for the additional hours work.

To the extent Rodriguez was paid above minimum wage, defendants are granted summary judgment with respect to her claim for spread-of-hours pay under N.Y.C.R.R. § 142-2.4. But where Rodriguez was paid at minimum wage, she is granted summary judgment to the extent that she shows that she was required be present more than a 10-hour spread in a given day.

C.    **Home Care Worker Wage Parity Act**

The New York Home Care Worker Wage Parity Act (the "WPA") "conditions Medicaid reimbursement for home health care services provided in New York City and the surrounding counties of Westchester, Suffolk and Nassau upon a home health care agency's certification that the home care aides who render the services are paid a minimum wage." Concerned Home Care Providers, Inc. v. State, 108 A.D.3d 151, 154 (3d Dep't 2013). This minimum wage is based on New York City's Living Wage Law, meaning it is actually higher than the general minimum wage. Id at 213. A portion of the WPA minimum wage may be paid as, *inter alia*, health care benefits and compensated time off. N.Y. Pub. Health Law § 3614-c(b); see also Carrasco, 2017 WL 6403521, at *10.

Both parties agree that the WPA covers some portion of Rodriguez's shifts. Defendants argue that Rodriguez received an additional $4.09 per hour in benefits from her health insurance, sick time, and paid time off during her Medicaid shifts. In addition to testimony from the Avondale corporate designee, Defendants provide documentation purporting to show that Rodriguez took advantage of these benefits. While it is plain that Avondale provided Rodriguez benefits in lieu of compensation, it is disputed whether these benefits were worth $4.09. A genuine issue of material fact exists as to the actual value of the benefits.

V.    **Lorna Grazio and Peter Carroll's Employer Status**

To determine whether an employment relationship exists for the purposes of the FLSA, the Court "must evaluate the 'economic reality' of the relationship." Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984). This test, applying what are known as the Carter factors, asks "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of

employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (quoting Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983). This is a balancing test, and no single factor is dispositive. Irizarry v. Catsimatidis, 722 F.3d 99, 116 (2d Cir. 2013). In addition to the Carter factors, courts also assess whether the individual (1) has operational control over the company and (2) actual exercises that control. Irizarry, 722 F.3d at 106. This test is coextensive with the inquiry used under New York law to determine whether an employment relationship exists. Sethi v. Narod, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) (collecting cases).

Grazio and Carroll are the CEO and President of Avondale, respectively, indicating that they maintain operational control of the company. Each has the power to hire and fire employees and to determine their pay rates. Avondale argues that the influence Grazio and Carroll wielded was limited and insufficient to establish employer status. On this disputed record, the Court reserves this question for the jury.


**CONCLUSION**

Plaintiff's motion is GRANTED in part and DENIED in part. Defendants' motion is GRANTED as to any claims for spread-of-hours pay when the Plaintiff was paid above the minimum wage, and DENIED in all other respects.

The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 53.

A conference to schedule final pre-trial filings and to set a trial date is scheduled for

Friday, April 13, 2018, at 3:30 p.m. in Courtroom 219, 40 Foley Square, New York, New York.

If either party is not available on that date, they must contact Courtroom Deputy Joseph

Mendieta immediately at (212) 805-0286.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:      March 27, 2018
             New York, New York